UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PHILLIP SCOTT McCOY, ) | Civil Action No.: 4:09-cv-0207-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| BLAINE LILJENQUIST and ) | |
| PLANTATION RESORT PROPERTIES, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.  INTRODUCTION**

Plaintiff filed this action pro se, alleging claims for wrongful termination in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. § 12101, et seq. as well as state law claims for wrongful termination, libel, slander, defamation, and intentional infliction of emotional distress. On November 19, 2009, Defendants filed a Motion for Summary Judgment (Document # 35).  Because Plaintiff was proceeding pro se, he was advised on December 21, 2009, pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' Motion for Summary Judgment, could result in dismissal of his Complaint. The deadline for Plaintiff's response to Defendant's Motion was January 25, 2010.[1] Plaintiff did not file a response by the deadline. On April 19, 2010, attorney J. Marshall Biddle filed a Notice of Appearance (Document # 45) on behalf

---

[1] As set forth in the Roseboro Order, pro se parties are given additional time, 34 days, to respond to a dispositive motion. A Roseboro Order should be filed immediately following the filing of a dispositive motion. However, due to a clerical error, the Roseboro Order is this case was not filed until over a month after Defendants' Motion for Summary Judgment was filed. Thus, Plaintiff had over two months to respond to Defendants' Motion.

of Plaintiff. However, to date, no response to Defendants' Motion has been filed.[2]

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II. FACTS[3]

Defendant Plaintation Resort Properties, Inc. (PRPI) markets and sells interval ownership in condominium units located primarily at Plantation Resort in Surfside Beach, South Carolina. Brown Aff. Blaine Liljenquist is the founder of Plantation Resort and PRPI, and he is the current President. Liljenquist Aff. PRPI maintains two separate sales departments: in-house and front line sales. Hungate Aff.; Brown Aff. Those who work at the Resort are "inhouse," while those who work outside the Resort, at locations such as visitors centers, are considered "front line" salesmen. Plaintiff Dep. at 53-55; Hungate Aff.; Brown Aff. At the time of his termination on October 22, 2007, Plaintiff was an in-house salesman. Plaintiff Dep. at 78. The timeshare business at PRPI has an off-season between the late fall and spring. Plaintiff Dep. at 125; Hungate Aff. Brown Aff.

Performance for timeshare salesmen is measured by one statistic- the salesman's Volume Per

---

[2]Counsel for Defendants represents the following in Defendants' Memorandum regarding Mr. Biddle's representation of Plaintiff:

On October 28, 2009, Marshall Biddle, Esq. contacted the undersigned and said he had met with Mr. McCoy and inquired as to the status of the case. Mr. Biddle informed the undersigned that he would be sending a letter of some kind to the undersigned regarding the case. However, no letter was sent and the undersigned has attempted to contact Mr. Biddle to determine the current status of representation to no avail.

[3]These facts are taken from Defendants' Memorandum in support of their Motion for Summary Judgment. They are undisputed by Plaintiff.

Guest average ("VPG"). Id. VPG is measured by the volume of sales made in relationship to the number of tours given. Id. For example, if a salesman tours ten prospective buyers, of whom one purchases one interval for $10,000.00 in a given month, that salesman's VPG for that month is $1,000.00 ($10,000.00/ 10). Hungate Aff. Plaintiff agreed that "VPG is not based upon the number of tours that you do; it's based upon the number of sales per tours that you do." Plaintiff Dep. at 84-85. VPG of $1,000.00 is recognized as the bare-minimum VPG for a salesman. Hungate Aff.; Brown Aff.

Prior to working for PRPI, Plaintiff was employed as a timeshare salesman by the Bluegreen Corporation in Myrtle Beach in 2003. Plaintiff Dep. p. 36. Following three months of employment, Plaintiff was terminated on the ground of "low VPG." Id. at 40.

On May 6, 2003, Plaintiff entered into an Independent Contractor's Agreement with PRPI, wherein Plaintiff agreed to sell timeshare for PRPI as a front line salesmen in consideration for 7% commission on all sales. Id. at 48-52; Exhibit 1. Plaintiff remained in frontline sales until he later transferred to in-house sales.[4] Plaintiff Dep. at 59. As an in-house salesman, Plaintiff earned a commission of between 7% and 8% and no salary. Id. at 62. Tours were allotted to in-house salesman on a rotation-basis, based on performance the previous week. Id. at 83; Hungate Aff. Stefani Hungate was Plaintiff's supervisor in the in-house department. Plaintiff Dep. at 59.

Plaintiff remained employed in this capacity until on or about December 15, 2006, the date of the company Christmas party. Id. at 62, 66; Exhibit 2. According to Plaintiff, prior to the Christmas party he "woke up one morning talking like [he] had a mouthful of marbles, and it

---

[4]Plaintiff testified he and three other salesmen and managers left Plantation Resort but returned three days later. Plaintiff Dep. at 57-59.

continued over a two- or three-day period." Plaintiff Dep. at 63-64. Plaintiff checked into the hospital and was told he had suffered three strokes. Id. The cause of these strokes was unknown at that time and remained unknown to Plaintiff at the time of his deposition. Id. Plaintiff remained out of work for approximately four months while he received speech therapy. Id. In April of 2007, Plaintiff's physician, at his request, released him to work on a part-time basis having "met all speech therapy goals." Id. at 73-75; Exhibit 4. Plaintiff took this letter to Stefani Hungate, who re-hired Plaintiff. Plaintiff Dep. at 75; Hungate Aff. Plaintiff returned to the in-house sales department, but worked only three full days per week. Plaintiff Dep. at 76.

On September 24, 2007, Plaintiff executed an Independent Contractor's Agreement providing that he was an independent contractor, terminable at-will, and that his commission continued to be 8%. Id. at 86-87. Plaintiff admits this Agreement does not require PRPI to show cause for termination. Id. at 100. Approximately one week before his termination, Plaintiff testified that Stefani Hungate- his friend and neighbor- went to his house and told him she may have to put him on a "two-for-ten" program, which is typically used for salesmen as a last shot prior to termination. Id. at 104 ("They hand you a piece of paper like that, and tell you you have got to sell two tours within the next ten tours or you're fired.").

On October 22, 2007, Stefani Hungate terminated Plaintiff's employment simultaneously with Sally Seabok for the identical reason, low VPG, and prepared a Termination Report stating: "Type of Separation: Dismissal; Rehire: Yes; Additional Comments: YTD #'s (872.06 VPG) need at least 900 VPG." Id. at 79-80; Exhibit 6. According to Plaintiff, none of the reasons given by Ms. Hungate for his termination were contrary to those provided in this report. Plaintiff Dep. at 85.

Plaintiff explained the following events occurred on the day of his termination:

> Q: What do you remember about … what occurred on October 22, 2007?
> A: I was called in the office and told I was dismissed.
> Q: Okay. Who was present with you?
> A: In the office?
> Q: Yes. Well, let's back up. Whose office was it?
> A: Stefani Hungate's.
> Q: Who was in the office when you were called in?
> A: Stefani Hungate, Barry Baxley and Sally Sebok.
> Q: Was Al Morrell in there?
> A: No.
> Q: Who was Barry Baxley?
> A: He was a manager, one of the sales managers.
> Q: In-house?
> A. Uh-huh. Yes, sir.
> Q: . . . Ms. Hungate was your direct supervisor; is that right?
> A: She was the director of that department.
> ***
> Q: All right. And tell me everything that you recall about who said what during that meeting.
> A: Stefani said, "You're dismissed."
> Q: Do you recall anything else that Ms. Hungate said during that meeting?
> A: Said something along the lines that "we would bring you back in the spring."
> Q: What was the reason that she gave you for the termination?
> A: VPG.
> Q: When you say VPG, you mean that she said you had low VPG?
> A: That's what she said, yes, sir.
> Q: All right. Now, did she also during that meeting tell Ms. Sebok, Sally Sebok, the same thing?
> A: Something along those lines, yes, sir, similar wording.
> Q: Low VPG, also?
> A: I think so, yes, sir.
> Q: And, in fact, both you and Ms. Sebok were terminated on the same day for the same reason; is that right?
> A: Yes, sir.

Plaintiff Dep. at 79-80.

Plaintiff also explained his current condition during his deposition: "Over the last year and a half in speech therapy, I have trained myself to speak slower. And if I speak slow enough, I don't

have any problem." Id. at 108.

According to PRPI records, Plaintiff gave 128 tours of the Resort to prospective buyers in 2007, making seventeen (17) sales totaling $109,007.00 in net volume. Hungate Aff. and Exhibits thereto; Brown Aff. and Exhibits thereto. Plaintiff's cumulative VPG at the time of his termination was therefore $851.62. Hungate Aff.; Brown Aff. Of all the in-house salesmen employed at the time, Plaintiff's VPG was the lowest. Brown Aff. and Exhibits thereto; Hungate Aff. and Exhibits thereto.

Plaintiff testified that, with regard to the aforementioned numbers reported and shown to him at his deposition, the only number he believes to be incorrect is the number of tours for the month of September (20 instead of 22) and, in turn, the total number of tours given (126 instead of 128). Plaintiff Dep. at 92, 101. Plaintiff testified, however, that he had no reports in his possession and no documents to prove otherwise. Id. at 92-93. Assuming such a mistake was made, Plaintiff's VPG would increase to $865.14.

Plaintiff asserts in his Complaint that he filed a Complaint with the South Carolina Human Affairs Commission on October 27, 2007, and received a Right to Sue letter on October 28, 2008. After a Substantial Weight Review by the Equal Employment Opportunity Commission, Plaintiff was issued a Dismissal and Notice of Rights Letter on January 13, 2009. This action was filed on January 27, 2009.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through

"depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. ADA Claim

Plaintiff asserts that Defendant PRPI[5] terminated his employment because of his disability in violation of the ADA. The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The Fourth Circuit has held that the causation and burden-shifting standards applicable in Title VII cases are also applicable in cases brought pursuant to the ADA "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." Ennis v. Nat'l Assoc. Of Business and Educ. Radio, 53 F.3d 55, 58 (4th Cir.1995). To establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) he was a "qualified individual with a disability"; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir.2001).

Assuming, arguendo, Plaintiff is a qualified individual with a disability, the record evidence reveals that he was not fulfilling his employer's legitimate expectations at the time of his discharge.

---

[5] Plaintiff names Blaine Liljenquist in the caption of his Complaint but fails to assert any claims against him in the body of the Complaint. Thus, he should be dismissed from this action.

As discussed above and supported by the Affidavits of Rodney Brown and Stefani Hungate, as well as Plaintiff's deposition testimony, Volume Per Guest average ("VPG") is the only statistic used to measure employee performance in the timeshare sales industry. This statistic is measured by the net volume of sales divided by the number of tours given by a salesman to generate those sales within a given period of time. The number of tours given bears no correlation to VPG. VPG of $1,000.00 is recognized as the bare-minimum VPG for a salesman. At the time of his termination, Plaintiff's VPG for all of 2007 was $851.62, the lowest of all active, in-house salesmen. Thus, Plaintiff was not meeting his employer's legitimate expectations at the time of his termination. Further, Plaintiff has presented no evidence that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. Accordingly, Plaintiff fails to establish a prima facie case of discrimination based upon his disability. Thus, summary judgment is appropriate on Plaintiff's ADA claim.[6]

B. State Law Claims

If the Court accepts this report and recommendation, then the original federal jurisdiction claim will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over

---

[6]Even assuming Plaintiff can establish a prima facie case of discrimination, summary judgment is still proper because Defendant has presented a legitimate, non-discriminatory reason for his discharge, his low VPG, and Plaintiff has failed to show that this reason is pretext for a discriminatory reason.

the state law claims).  See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989).  Therefore, the undersigned recommends that the Court decline to retain jurisdiction over Plaintiff's state law causes of action for wrongful termination, libel, slander, defamation, and intentional infliction of emotional distress.

**V.     CONCLUSION**

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 35) be granted as to Plaintiff's ADA claim, that the court decline to exercise jurisdiction over Plaintiff's state law claims and that this case be dismissed in its entirety.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

June 22, 2010<br>
Florence, South Carolina

**The parties are directed to the important notice on the following page.**